CONN LUMBER CO. v. HORTMAN-SALMEN CO., INC.

(December 16, 1929. Opinion and Decree.)
(January 13, 1930. Rehearing Refused.)

Louis H. Yarrut, of New Orleans, attorney for plaintiff, appellee.

E. A. Carmouche, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. Plaintiff, a commercial copartnership, engaged in the manufacturing, buying and selling of all grades of lumber, entered suit against the defendant corporation, which is engaged in the business of buying and selling lumber, for the sum of $1,494.75, with legal interest from June 1, 1926, until paid. The petition alleges that on or about May 27, 1926, one W. D. McDowell, purchasing agent, and one H. C. Moragne, inspector and road buyer, who were the duly authorized agents of the defendant, called upon Mr. A. L. Conn, representative of the plaintiff, for the purpose of buying certain piling from plaintiff for the account of defendant corporation; that said Conn informed the agents of the defendant that he would sell them such piling as defendant's agents would select at $.15 per linear foot, f. o. b. cars Bogalusa, all of which was agreed to by the said McDowell and Moragne; that in accordance with the said verbal agreement the said Moragne selected certain trees from plaintiff's forest near Bogalusa and supervised the cutting and peeling of these trees in order to make piling out of them; that all of the labor and work was done by plaintiff's force in plaintiff's place of business; that the said Moragne entirely supervised the cutting and manufacturing of the piling and inspected and loaded the same for shipment to defendant at New Orleans; that plaintiff sold and delivered

to defendant a total of 9,965 linear feet of piling at $.15 per foot, or a total of $1,494.75; that under the agreement the selection and acceptance of the piling at Bogalusa would be final, and that said piling were to be paid for on or before June 1, 1926; and that defendant had failed to pay for same notwithstanding amicable demand.

Defendant admits substantially all the allegations of plaintiff's petition but defends the case on the ground that the said H. C. Moragne was the agent and representative of the defendant for the purpose of buying manufactured piling and had no authority to undertake to manufacture piling with the laboring forces of the plaintiff; that as a result of said Moragne undertaking the manufacturing of the piling he became the agent and representative of the plaintiff, and that the said Moragne thereby placed himself in a position where he could not serve both plaintiff and defendant, as their interests were conflicting; that the said A. L. Conn was guilty of collusion with the said Moragne and as a result of same that said Moragne breached his duty and obligation to his principal by permitting useless piling, unsuitable for the purposes for which Moragne was supposed to buy them, to be shipped to the defendant, with the result that a large portion of the piling was rejected at New Orleans by defendant; that defendant held said piling for the account of plaintiff and advised it that, if the piling were not removed by plaintiff, defendant would sell them in the open market for plaintiff's account at the best prices obtainable; and that the said Moragne, while in the employ of defendant and receiving compensation for his exclusive service, was at the same time in the employment of plaintiff as its agent for soliciting business.

In a supplemental answer filed on April 20, 1928, defendant admitted that it sold 107 piling, which had originally been rejected, for the price and sum of $1,007, against which there were certain expenses for handling and selling, amounting to $520.29, leaving a balance of $888.71, and confessed judgment for this amount. On a rule taken by plaintiff, judgment pro tanto for $888.71 was rendered in favor of plaintiff.

On the trial of the case on the merits there was judgment in favor of plaintiff for the difference between $1,494.75 and $888.71, or $606.04, with legal interest from June 1, 1926, until paid. From this judgment defendant took this appeal.

The record shows that there were 147 piling shipped by plaintiff to defendant, and that defendant rejected 107 of the piling and accepted 40 of them when the shipment reached New Orleans.

The facts in the case are practically agreed upon, except that the defendant contends that, as Mr. A. L. Conn knew that Mr. Moragne was the representative of the defendant company, whose duty it was to inspect the piling before their shipment to New Orleans, and, as Mr. Conn invited and permitted Mr. Moragne to go into plaintiff's forest, select, mark, blaze, and supervise the cutting of the standing trees out of which the piling were manufactured, said Moragne having full charge over plaintiff's crew of workmen, said Conn thereby placed defendant's agent in a position where he was unable to do his complete and conscientious duty towards his principal in the selection of the piling.

The record does not show that there was any collusion between Mr. Conn and Mr. Moragne, but that Mr. Conn simply stated to Mr. Moragne and Mr. McDowell that he did not have much experience in

handling piling, but that, if the timber in plaintiff's forest was satisfactory, they could select the trees from which the piling would be manufactured at a cost of $.15 per linear foot for the piling so selected and manufactured by plaintiff's workmen under the supervision of Mr. Moragne. The record also shows that Mr. Moragne did select the trees from which the piling were manufactured, and that all of this was done under his supervision. He inspected and approved them before they were shipped to defendant at New Orleans.

We fail to see wherein Mr. Moragne placed himself in a position where he deprived his principal of his judgment and loyalty as its inspector. There was nothing inconsistent about Mr. Moragne's position. He was at all times the representative of the defendant company and was given the choice of selecting the trees from which the piling were to be manufactured. After they were so manufactured he was permitted to inspect them before shipment to his principal. There is nothing in the record to show that he was guilty of disloyalty or unfaithfulness to his principal. We fail to find where any fraud was practiced upon defendant. Mr. Conn did not in any way influence Mr. Moragne in the selection of the trees and approving the piling after they were manufactured. The record shows that Mr. Conn was absent during this time.

The supplemental answer of the defendant shows that 107 piles were rejected and 40 accepted. The value of the accepted 40 was $402 and of the rejected 107 was $1,007. This shows that those accepted by Mr. Moragne for defendant's account were worth what defendant obliged itself to pay for them.

For the reasons assigned the judgment is affirmed.